**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JOHNNY LEE ASHFORD,

    *Plaintiff*,

v.

SAGINAW, COUNTY OF;
DAVID CABLE; and ELDOR
HERRMANN,

    *Defendants*.

_____/

CASE NO. 10-CV-11975

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS**
(Docs. 8, 11)

**I.**     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motions to dismiss be **GRANTED** and that the case be **DISMISSED**.

**II.**     **REPORT**

    **A.**     **Introduction & Procedural History**

Plaintiff Johnny Lee Ashford is a former state prisoner who was convicted via guilty plea of assaulting/resisting/obstructing a police officer and with being a habitual offender, third offense, in Saginaw County, Michigan. (Doc. 1 ¶ 5; Doc. 11 at Ex. 1.) Plaintiff complains that the trial court's failure to appoint appellate counsel violated his Fourteenth Amendment right to due process. Defendants County of Saginaw and David Cable filed a motion to dismiss on June 11, 2010. (Doc. 8.) On June 24, 2010, Defendant Eldor Herrmann filed a motion to dismiss. (Doc.

11.) On June 28, 2010, United States District Judge Thomas L. Ludington referred both motions to the undersigned magistrate judge. (Doc. 12.) Plaintiff responded to both motions (Docs. 13, 16) and Defendants replied. (Docs. 14, 17.) Oral argument was held on August 6, 2010. After considering the arguments of the parties and upon review of the documents, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation.

**B.      Plaintiff's Complaint**

Plaintiff summarizes that "[t]his is an action for money damages arising out of the excessive incarceration of Plaintiff . . . under the 1983 Act . . . because these claims arise under the Constitution and the laws of the United States . . . ."[1] (Complaint, Doc. 1 ¶¶ 1-2.) More specifically, Plaintiff states that in 2007 he was charged with assaulting/resisting/obstructing a police officer and with being a habitual offender, third offense, in Saginaw County, Michigan. (Doc. 1 ¶ 5; Doc. 11 at Ex. 1.) Attorney Eldor Herrmann was appointed to represent Plaintiff and a plea agreement was reached and placed on the record on July 17, 2007. (Doc. 1 ¶¶ 6-7.) The agreement included Saginaw County Circuit Judge Fred Borchard's commitment that he would impose a sentence within the applicable sentencing guideline range. (*Id*. ¶ 6.) At the time, the parties believed the sentencing guideline range would be 0-16 months and, according to Plaintiff, Eldor Herrmann told Plaintiff the maximum sentence that he would receive would be 12 months in the county jail. (*Id*. ¶ 9.)

Plaintiff pleaded guilty on July 17, 2007, and was sentenced on August 22, 2007, to a minimum of 32 months and a maximum of 4 years in state prison with credit for 179 days served. (*Id*. ¶ 11.) Plaintiff requested that appellate counsel be appointed, but that request was denied by Judge Borchard on October 4, 2007. (Doc. 1 ¶¶ 14-15.; Doc. 8 at Ex. 1.) A subsequent request

---

[1] The Court presumes that Plaintiff is referring to 42 U.S.C. § 1983.

2

for appellate counsel made by Plaintiff on November 26, 2009, was granted in January 2010, by which time Plaintiff had served his sentence and had been released from prison. (Doc. 1 ¶ 17.)

Plaintiff contends that had he "received appointed counsel [on appeal,] his plea would have been challenged and he would have, at the minimum, not served the excessive period of time in prison." (Doc. 1 at 4.) Plaintiff adds that this failure to appoint appellate counsel was in contravention of the U.S. Supreme Court ruling in *Halbert v. Michigan*, 545 U.S. 605, 125 S. Ct. 2582, 162 L. Ed. 2d 552 (2005), which held that indigent defendants who plead guilty to criminal offenses are entitled to appointed counsel for first-tier appellate review. Plaintiff avers that his "14th Amendment right to appointed counsel to appeal their [sic] conviction and sentence" was violated by Defendant Cable's "failure to initiate the process for Plaintiff to receive his constitutional right to appointed counsel." (Doc. 1 ¶¶ 22, 23, Count I).

Plaintiff further avers that Saginaw County "had no policy in place by October of 2007 . . . or the County had a policy of not providing appellate counsel . . . ." (Doc. 1 ¶ 28, Count II.)

Finally, Plaintiff avers that Defendant Herrmann committed legal malpractice by failing to correct an improperly scored sentencing guideline range resulting in Plaintiff serving his sentence in prison rather than the county jail. (Doc. 1 ¶¶ 40-43, Count III.)

### C. Motion Standards

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The elements of a civil rights claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In a civil rights case, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. *See also Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant).

### D. Parties' Arguments

The parties' positions were further clarified at oral argument. The parties do not dispute that Plaintiff was improperly denied appointment of appellate counsel by Judge Borchard in 2007 since the *Halbert* case had been decided in 2005 and required that such appointment be made. Defendants contend that Plaintiff's complaint unsuccessfully attempts to circumvent Saginaw County Circuit Judge Borchard's judicial immunity by filing suit against Saginaw County and its Court Administrator, Defendant Cable.

Defendant Cable argues that he is entitled to judicial immunity since he acted, if at all, pursuant to Judge Borchard's order. Similarly, Defendant Saginaw County posits that it should be dismissed because it also acted, if at all, at the behest of Judge Borchard. Defendant Saginaw County also argues that there can be no causal connection between any policy (or lack thereof) on the part of the county because the county lacks the power to direct judges to rule in any particular

way, i.e., to appoint (or not appoint) counsel. Defendant Saginaw County adds that any attempt by it to wield power over judges would violate the separation of powers doctrine.

Plaintiff counters that the county's role in funding the courts, in creating a form eventually used to grant Plaintiff's request for counsel, and the "interplay" between court administrators and the judges is sufficient indicia of a policy or practice and that discovery may lead to evidence that the county pressured judges to routinely deny appellate counsel because of funding issues. Defendant Saginaw County responds that Plaintiff has not alleged that counsel was denied because of lack of funding by the county in his complaint. Defendant Saginaw County further argues that even if the county had a long-standing practice of denying counsel based on funding issues, the county would be powerless to violate the court's order and appoint counsel over the judge's denial.

Defendant Eldor Herrmann contends that he had nothing to do with the failure to appoint appellate counsel and that the claim against him is barred by the two-year statue of limitations applicable to attorney malpractice cases in Michigan. Plaintiff counters that Plaintiff did not know he had a claim until after he went to another lawyer's office after he was released from prison in January 2010. Defendant Herrmann adds that, should the 42 U.S.C. § 1983 claims be dismissed, supplemental jurisdiction would be lost and the malpractice claim should also be dismissed.

E. Analysis & Conclusions

1. Defendant Cable

Plaintiff complains that his constitutional rights were violated by Defendant Cable's "failure to initiate the process for Plaintiff to receive his constitutional right to appointed counsel." (Doc. 1 ¶¶ 22, 23, Count I). As Defendant Cable pointed out, if he "initiated process" to appoint appellate counsel, such process would have been in direct contravention of Judge Borchard's Order denying appellate counsel.

Judges have absolute immunity from civil rights suits for actions performed in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). Other court officers, such as court clerks and court administrators, also "enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) (judges); *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (municipal court clerk)). "Such individuals will not, however, be immune from suit 'for non-judicial actions, i.e., actions not taken in the judge's judicial capacity,' and 'for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Watts v. Day,* 129 Fed. App'x 227, 232 (6th Cir. 2005) (citing *Cooper v. Parish*, 203 F.3d 937, 945 (6th Cir. 2000)). Courts "look to the nature of the function at issue and not merely to the identity of the actor or the harm caused." *Id.* When looking to the nature of the function, courts "must determine whether the act is related to those general functions that are normally performed by a judicial officer . . . [and] assess whether the parties expected to deal with the judicial officer in the officer's judicial capacity." *Cooper*, 203 F.3d at 945.

In *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994), the Sixth Circuit joined other circuits in holding that "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Id*. at 847-48. The Court noted that "officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority . . . . It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings." *Id.* at 848.

In the instant case, Plaintiff complains of Defendant Cable's enforcement or failure to contravene Judge Borchard's order. The law does not require, however, that Defendant Cable "question the judge's findings." *Id.* at 848. I therefore suggest that Defendant Cable's enforcement or failure to contravene Judge Borchard's order fits squarely within the immunity granted judges.

The distinction drawn in *Watts, supra*, supports this conclusion. In *Watts*, the defendant court administrator "merely performed the administrative act of negotiating a contract with area attorneys, and did not engage in the judicial function of actually appointing counsel to represent persons before the court," so the defendant court administrator was not entitled to judicial immunity. *Watts*, 129 Fed. App'x at 233. However, in the instant case, the function challenged is the very act of appointing, or failing to appoint, a lawyer to represent a person, which is a judicial function entitled to immunity. I thus suggest that Defendant Cable is entitled to quasi-judicial immunity and dismissal from this case.

### 2. Defendant County of Saginaw

Plaintiff avers that Saginaw County either "had no policy in place by October of 2007 . . . or the County had a policy of not providing appellate counsel . . . ." (Doc. 1 ¶ 28, Count II.)

Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. *Id.* A local governmental entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id.* In other words, the policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Polk County v. Dodson*, 454 U.S.

312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981)). Defendant Saginaw County contends that it cannot be the moving force of any unconstitutional deprivation of appellate counsel because it has no power over state circuit judges.

Circuit judges in Michigan are not employees of the county and, thus, are not under the control of the county. *Chee v. Washtenaw County, Michigan*, No. 08-CV-11416, 2008 WL 2415374, at *4 (E.D. Mich. June 12, 2008) (noting that a state circuit court judge "is not an employee of the County, but of the State of Michigan."). In addition, Michigan judges act independently from the county because they are a part of an independent and coequal branch of government. *Elliott v. Hoort*, No. 1:07-cv-904, 2008 WL 1745589, at *2, n. 2 (W.D. Mich. Aug. 14, 2008) ("Michigan circuit judges are not county employees, nor are they under the county's control. Rather, they are members of the state's independent judicial branch.")

I therefore suggest that a Michigan county cannot be a force, let alone the moving force, behind the acts of an independent state judge. As a result, I suggest that the claim against Defendant Saginaw County must be dismissed. *See also Fox v. VanOosterum*, 176 F.3d 342, 353-54 (6th Cir. 1999) (holding that plaintiff's claim regarding "discretionary time incarceration against Mason County fails because [plaintiff] has not established a Mason County policy or custom as required by *Monell* . . . the actual imposition of the sentence in this case was done by a state rather than a county employee – the state circuit judge."); *Coleman v. Granholm*, No. 06-12485, 2008 WL 458934, at *5 (E.D. Mich. Oct. 14, 2008) (dismissing § 1983 claim against state circuit court judge, court administrator, and law clerks because they are state employees such that their "unlawful application" of the state statute was state rather than county action).

To the extent that Plaintiff now argues, orally, that there was some "interplay" between the county and the courts or that some financial pressure was placed on judges to deny appellate

9

counsel by the county, Plaintiff has not alleged any such coordination or compulsion in the complaint as required under Rule 8. Even if Plaintiff had made such allegations in his complaint, I suggest that since the county lacks the power to control judges, the county's mere requests cannot be the moving force behind a judge's decision to grant or deny appellate counsel. Accordingly, I recommend that the claim against Saginaw County be dismissed for failure to state a claim upon which relief can be granted.

### 3. Defendant Herrmann

I suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain the pendent state law claims made against this Defendant. *See id*. at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") *See also Hankins v. The Gap, Inc*., 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims). I therefore recommend that the state law claim for legal malpractice against Defendant Herrmann be dismissed as well. *See White v. Robertson-Deming*, 9 Fed. App'x 418, 420 (6th Cir. 2001) (dismissing malpractice claim at same time as federal claims).

### F. Alternative Analysis

Alternatively, I suggest that Plaintiff's complaint is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Doc. 37 at 9-11.) Generally, suits challenging the fact or duration of confinement must be brought under the habeas corpus statutes and not § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 489-90, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). In *Heck v. Humphrey*, however, the U.S. Supreme Court considered whether

this rule should be modified where a prisoner does not seek release but instead seeks an award of monetary damages. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

This "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original). The favorable termination rule "is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490, n.10; *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). In addition, challenges based on procedural defects rather than erroneous results are also subject to the limitation announced in *Heck*. *Edwards v. Balisok*, 520 U.S. 650, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) (if established, procedural defect would imply the invalidity of the deprivation of good-time credits and thus, was *Heck*-barred).

Plaintiff complains that "[t]his is an action for money damages arising out of the excessive incarceration of Plaintiff" and that had he "received appointed counsel [on appeal] his plea would have been challenged and he would have, at the minimum, not served the excessive period of time in prison." (Doc. 1 ¶¶ 1, 24.) According to Plaintiff's complaint, the harm caused by the unconstitutional denial of appellate counsel was incarceration for an excessive amount of time.

I therefore suggest that Plaintiff's complaint alleges a challenge to the duration of confinement which must be brought under the habeas corpus statutes[2] and not § 1983. *Heck; Preiser; Wappler v. Carniak*, 24 Fed. App'x 294, 296 (6th Cir. 2001) (since claim that sentence was improperly enhanced by use of unconstitutional conviction would imply the invalidity of his sentence and the sentence was not successfully challenged, claim was *Heck*-barred).

### G. Conclusion

For all the reasons stated above, I recommend that Defendants' motions be granted and the case be dismissed in its entirety.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

---

[2] I note that habeas claims have been filed by other Michigan prisoners who were denied appellate counsel despite *Halbert's* ruling. *See, e.g. Sanders v. Lafler*, 618 F. Supp. 2d 724 (E.D. Mich. 2009).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

    s/ Charles E Binder
    CHARLES E. BINDER
Dated: September 2, 2010    United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: September 2, 2010    By   s/Patricia T. Morris
    Law Clerk to Magistrate Judge Binder